UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
SILVER SANDS MOTEL INC., *et al.*,

      Plaintiffs,      **MEMORANDUM
                    AND ORDER**
                    21-CV-01224 (GRB) (JMW)

   -*against*-

LONG ISLAND CAPITAL MANAGEMENT,
*et al.*,
      Defendants.
----------------------------------------------------------------X

**A P P E A R A N C E S**

**Matthew W. Schmidt**
**John G. Balestriere**
Balestriere Fariello
225 Broadway, Suite 2900
New York, New York 10007
*Attorneys for Plaintiff*

**Jerry M. Mims**
21 Andiron Lane
Brookhaven, New York 11719
*Pro se Defendant*

**WICKS,** Magistrate Judge:

  *Can a party in a civil RICO action compel the unsealing of criminal records of an adverse party, when the past criminal conduct purportedly arises out of the same occurrences that form the basis of the civil lawsuit?* This latest discovery motion tees up that precise issue.

  Plaintiffs Silver Sands Motel Inc. ("Silver Sands"), Jean Jurenzia Burden, and Richard Terry Keefe, IV commenced this civil action pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, *et seq.*, alleging that *pro se* Defendant Jerry M. Mims along with Defendants Long Island Capital Management, Eric Friedlander, Peter Schembri, and Does 1–5[1] violated the RICO Act

---

[1] Since the genesis of this lawsuit, the causes of action against Defendant Long Island Capital Management have been dismissed (DE 17), and Defendants Eric Friedlander, Peter Schembri, and Does 1–5 have not yet appeared. As such, Defendant Mims is at this time the only party actively defending this lawsuit.

by, *inter alia*, fraudulently inducing Plaintiffs into executing mortgages and keeping or using the proceeds of the mortgages for their benefit. Plaintiffs now move to compel Defendant Mims to unseal records in the possession of the Suffolk County District Attorney's Office (the "DA") related to a past criminal investigation of Mims purportedly arising out of the same transactions and occurrences complained of in this civil matter. Mims opposes Plaintiffs' motion. For the reasons that follow, Plaintiffs' motion to compel is denied.

## BACKGROUND

The following allegations are drawn from the complaint. In short, Plaintiffs allege that in 2008 Mims approached Burden about investing in a real estate deal. (DE 1 ¶ 45.) Burden responded that she was not interested but instead wanted to borrow a negative pledge[2] as she regularly did to support Silver Sands during the winter. (*Id.*) Plaintiffs allege that instead of securing a negative pledge for $300,000, Mims had Burden sign a mortgage for $750,000. (*Id.* ¶ 47.) Plaintiffs allege that this occurred because Burden suffers from ocular histoplasmosis, resulting in severely impaired vision. (*Id.* ¶ 49.) Burden thus allegedly relied on Mims to read the documents for her, allowing him to lie about their contents and execute this and other mortgages. (*Id.* ¶¶49–51.) Plaintiffs allege that, as a result of Mims' nefarious behavior, the Silver Sands was defrauded out of at least $3,000,000 by Mims and the other Defendants who worked together to convert Burden's mortgage proceeds into profits for Defendants. (*Id.* ¶ 1.) Plaintiffs accordingly assert that Defendants violated the RICO Act when they, *inter alia*, duped Burden into signing mortgages to satisfy previously fraudulently induced mortgages. (*See generally* DE 1.)

As noted above, Plaintiffs now seek to compel Mims to unseal and produce documents and communications concerning the DA's prior criminal investigation of Mims, including all relevant escrow records and documents from between 2007 and 2013. (DE 25 at 1–2.)

---

[2] A negative pledge is a securitization device that "prevents a borrower from pledging any assets if doing so would jeopardize the lender's security." Marshall Hargrave, *Negative Pledge Clause*, INVESTOPEDIA (May 13, 2020), https://www.investopedia.com/terms/n/negativepledgeclause.asp.

## THE LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 26:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

Information "is relevant if: '(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.'" *Vaigasi v. Solow Mgmt. Corp.*, No. 11 Civ. 5088, 2016 WL 616386, at *11 (S.D.N.Y. Feb. 16, 2016) (quoting Fed. R. Evid. 401). Moreover, "[t]he party seeking the discovery must make a *prima facie* showing that the discovery sought is more than merely a fishing expedition." *Evans v. Calise*, No. 92 Civ. 8430, 1994 WL 185696, at *1 (S.D.N.Y. May 12, 1994); *see also Mandell v. The Maxon Co., Inc.*, No. 06 Civ. 460, 2007 WL 3022552, at *1 (S.D.N.Y. Oct. 16, 2007) ("[T]he party seeking discovery bears the burden of initially showing relevance."). In that vein, the discovery sought by the parties must be, as stated by Rule 26, proportional to the needs of the case, taking into consideration such aspects as the importance of the issues, the amount in controversy, the parties' resources and access to the information sought, and the importance of the information sought to the asserted claims or defenses. *Sibley v. Choice Hotels Int'l*, CV 14-634 (JS)(AYS), 2015 WL 9413101, at *2–3 (E.D.N.Y. Dec. 22, 2015). It is well-established that, ultimately, "[m]otions to compel are left to the court's sound discretion." *Mirra v. Jordan*, No. 13-CV-5519, 2016 WL 889683, at *2 (S.D.N.Y. Feb. 23, 2016); *see also Liberty Mut. Ins. Co. v. Kohler Co.*, No. 08-CV-867, 2010 WL 1930270, at *2 (E.D.N.Y. May 11, 2010) ("[A] motion to compel is entrusted to the sound discretion of the district court.").

When it comes to the production of documents and other tangible items, Federal Rule of Civil Procedure 34(a)(1) governs. *See Wall v. City of N.Y.*, 502 F. Supp. 3d 686, 961 (E.D.N.Y. 2020). A party may serve a request within the scope of Federal Rule of Civil Procedure 26(b) to another party to produce

3

and permit inspection and the copying of items in the responding party's possession, custody, or control. Fed. R. Civ. P. 34(a)(1). "Control" under this rule is "construed broadly to encompass documents that the respondent has the legal right, authority, or practical ability to obtain . . . upon demand." *Chevron Corp. v. Salazar*, 275 F.R.D. 437, 447 (S.D.N.Y. 2011) (internal quotation marks omitted). Where a party contests its ability to produce the document, the requesting party then bears the burden of demonstrating the respondent's control "since the issue of the degree of respondent's control is a question of fact." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 236 F.R.D. 177, 180 (S.D.N.Y. 2006); *see Gross v. Lunduski*, 304 F.R.D. 136, 142 (W.D.N.Y. 2014). Thus, the question here is whether Mims has "control" or the legal right, authority and ability to obtain the requested documents.

## DISCUSSION

The Court gleans from the parties' submissions that the records sought by Plaintiffs from Mims, and thus the DA, were automatically sealed pursuant to New York Criminal Procedure Law Section 160.50 ("Section 160.50"). Section 160.50 states in relevant part that,

> 1. Upon the termination of a criminal action or proceeding against a person in favor of such person . . . the record of such action or proceeding shall be sealed . . . . Upon receipt of notification of such termination and sealing:
>
> (c) all official records and papers, including judgments and orders of a court but not including published court decisions or opinions or records and briefs on appeal, relating to the arrest or prosecution . . . on file with the division of criminal justice services, any court, police agency, or prosecutor's office shall be sealed and not made available to any person or public or private agency.

N.Y. Crim. Proc. Law § 160.50(1)(c) (McKinney 2021).

"The primary purpose of the sealing of records pursuant to [Section] 160.50 is to ensure confidentiality and protect the individual from the potential public stigma associated with a criminal prosecution." *Thomas v. Mason*, Civ. No. 1:17-CV-626 (GTS/DJS), 2018 WL 11247055, at *1 (E.D.N.Y. June 25, 2018) (citing *Harper v. Angiolillo*, 89 N.Y.2d 761, 766, 680 N.E.2d 602, 605, 658 N.Y.S.2d 229, 232 (1997)). Section 160.50 furthers "important privacy interests" and, as such, "'a strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges" such as Section 160.50, "where this can be accomplished at no substantial cost to federal substantive and procedural

4

policy.'" *Crosby v. City of N.Y.*, 269 F.R.D. 267, 274 (E.D.N.Y. 2010) (quoting *King v. Conde*, 121 F.R.D. 180, 187 (E.D.N.Y. 1988)). That said, "'state privilege rules [such as Section 160.50] should not be permitted to frustrate the important federal interests in broad discovery and truth seeking and the interest in vindicating important federal substantive policy.'" *Thomas*, 2018 WL 11247055 at *2 (quoting *MacNamara v. City of N.Y.*, No. 04Civ.9612(KMK)(JCF), 2006 WL 3298911, at *3 (S.D.N.Y. Nov. 13, 2006)).

The Court notes that sealed documents are ordinarily not considered within a party's possession, custody, or control under Rule 34. *See Harvey v. Town of Greenwich*, No. 3:17-cv-1417 (SRU), 2021 WL 3725991, at *4 (D. Conn. Aug. 23, 2021) (noting that plaintiff's criminal records were not in his possession, custody, or control because they were sealed pursuant to California law). The reason being is that, to obtain such documents, individuals who are the subject of the sealed records themselves must request that they be unsealed. *Id.*; *see* N.Y. Crim. Proc. Law § 160.50(1)(c) (requiring individual or individual's agent to make request for unsealing of investigatory record). And, even when such a request is made, individuals may nonetheless be met with headwind from the state authority responsible for maintaining the sealed documents. *See Lehman v. Kornblau*, 206 F.R.D. 345, 347 (E.D.N.Y. 2001) ("[E]ven when it is the accused who requests the unsealing, 'a former defendant does not have an absolute right to the disclosure of materials sealed pursuant to [Section] 160.50.'") (quoting *Harper*, 89 N.Y.2d at 767, 680 N.E.2d at 602, 658 N.Y.S.2d at 229)). The upshot is that there is no automatic right to one's own sealed criminal records.

Different considerations apply when one puts his or her *own* past criminal records at issue in a lawsuit, such as seen in Section 1983 cases. *See, e.g.*, *Thomas*, 2018 WL 11247055 at *2 (compelling plaintiff to request unsealing of criminal records because he put the documents at issue); *Schomburg v. N.Y.C. Police Dep't*, 298 F.R.D. 138, 141–42 (S.D.N.Y. 2014) (compelling district attorney to unseal and produce non-privileged materials from plaintiff's criminal record); *Crosby*, 269 F.R.D. at 275 (same). The reason is, of course, that such circumstances give rise to an "at issue" waiver. *See Green v. Montgomery*, 219 F.3d 52, 57 (2d Cir. 2000) ("New York cases are clear that a party otherwise protected by a § 160.50

5

sealing of records can waive that protection by commencing a civil action and placing protected information into issue.").

Here, however, the parties tread on different terrain. It is Plaintiffs, not Mims, that seek to put Mims' criminal records at issue in this case. Thus, Mims has not effectuated an "at issue" waiver of the privacy protections of Section 160.50. As a result, since Mims has not waived privacy protections, *see Thomas*, 2018 WL 11247055 at *2, and, because such sealed documents are not considered within Mims' possession, custody, or control, *Harvey*, 2021 WL 3725991 at *4, the Court declines to compel Mims to request that his criminal records be unsealed. Rather, the path forward is for Plaintiffs to perhaps first subpoena the DA for production of the records regarding Mims' criminal investigation. Then, "if the [DA] were to object to production of the documents upon the grounds that they were sealed under [Section] 160.50, it would then be within the purview of the federal court to determine whether or not to enforce such a state-created protection." *Thomas*, 2018 WL 11247055 at *2 (citing *Lehman*, 206 F.R.D. at 347). Only then may this Court analyze whether Section 160.50's privacy privilege should apply in this context.[3] *Id.* Accordingly, Plaintiffs' motion to compel is denied with leave to renew should the DA refuse to unseal Mims' records at issue.

---

[3] Indeed, because the sealed records are not before the Court at this time, it is impossible to determine, based solely on the parties' papers, whether the documents and communications sought by Plaintiffs are relevant to the present dispute and thus discoverable under Rule 26. This decision, therefore, does not constitute a determination of whether Mims' sealed records are relevant to Plaintiffs' claims. The Court will consider relevancy should the issue of the discoverability of Mims' sealed records come before the Court at a more appropriate time.

**CONCLUSION**

For the foregoing reasons, Plaintiffs' motion to compel is denied. Plaintiffs are granted leave to renew their application should the DA refuse to unseal the records sought.

Dated: Central Islip, New York
March 14, 2022

**S O   O R D E R E D:**

/s/ *James M. Wicks*
JAMES M. WICKS
United States Magistrate Judge