**FILED
CLERK**

June 15, 2023

**U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SILVER SANDS MOTEL INC., *et al.*,

                   Plaintiffs,

               -*against*-

LONG ISLAND CAPITAL MANAGEMENT,
*et. al.,*
                   Defendant.


------------------------------------------------------------X

                                          <u>**ORDER**</u>
                            21-CV-01224 (GRB) (JMW)

**A P P E A R A N C E S**

Matthew W. Schmidt
John G. Balestriere
**Balestriere Fariello**
225 Broadway, Suite 2900
New York, New York 10007
*Attorneys for Plaintiffs*

**Jerry M. Mims**
21 Andiron Lane
Brookhaven, New York 11719
*Pro se Defendant*

Sharyn Heather Gitter
**Office of the District Attorney, Suffolk County**
400 Carleton Avenue
Central Islip, NY 11722
*Attorney for Interested Party*

**WICKS,** Magistrate Judge:

Can the Court compel non-party Suffolk County District Attorney to produce sealed documents concerning a prior criminal investigation against Defendant over Defendant's objection?  Plaintiffs' latest discovery motion tees up that precise question.

Plaintiffs Silver Sands Motel Inc. ("Silver Sands"), Jean Jurenzia Burden ("Burden"), and Richard Terry Keefe, IV ("Keefe") commenced this civil action pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, *et seq.*, alleging that *pro se* Defendant Jerry M. Mims[1] along with Defendants Long Island Capital Management, Eric Friedlander, Peter Schembri, and Does 1–5[2] violated the RICO Act by, *inter alia*, fraudulently inducing Plaintiffs into executing mortgages and keeping or using the proceeds of the mortgages for their benefit.  Plaintiffs now move to compel the Suffolk County District Attorney's Office ("DA"), a non-party to this case, to produce documents related to a past criminal investigation of Mims purportedly arising out of the same transactions and occurrences complained of in this civil matter.  The DA opposes Plaintiffs' motion in the form of a motion to quash.  For the

---

[1] Although Mims is *pro se* here, he is an attorney and acted as Burden's attorney during the period in question.  (DE 1 ¶¶ 48-49).  Notwithstanding that Mims appears *pro se*, he does not enjoy the benefit of the more liberal *pro se* standard since he is an attorney himself; rather, he is held to the same standard as any other attorney.  *See Woods v. State*, 469 F. Supp. 1127, 1128 n.1 (S.D.N.Y. 1979) ("Although plaintiff appears pro se, he is an attorney and is held to the same standards as other attorneys appearing before the Court."); *Leeds v. Meltz*, 898 F. Supp. 146, 149 (E.D.N.Y. 1995) ("Here, however, the complaint was drafted by a lawyer. Plaintiff has been admitted to practice and notes in the complaint that he has prosecuted several actions previously. Thus, relaxation of already liberal pleading standards is not appropriate despite the plaintiff's *pro se* status."); *De Fina v. Latimer*, 79 F.R.D. 5, 7 (E.D.N.Y. 1977) ("Plaintiff, proceeding *pro se*, is an attorney, and the court has a right to expect skillfully drawn pleadings from her.").

[2] Since the genesis of this lawsuit, the causes of action against Defendant Long Island Capital Management have been dismissed (DE 17), and Defendants Eric Friedlander, Peter Schembri, and Does 1–5 have not yet appeared.  As such, Mims is the sole remaining defendant. A stipulation of dismissal was filed and so ordered as to the other Defendants with prejudice and without costs and fees for any party.  (DE 29; DE 30.)

reasons that follow, Plaintiffs' motion to compel (DE 34) is GRANTED and the DA's motion to quash (DE 40) is DENIED.

## **BACKGROUND**

The following allegations are drawn from the complaint (DE 1.).   In short, Plaintiffs allege that in 2008 Mims approached Burden about investing in a real estate deal.   (*Id.* ¶ 45.) Burden responded that she was not interested but instead wanted to borrow a negative pledge[3] as she regularly did to support Silver Sands during the winter.   (*Id.*)   This pledge would have essentially prohibited her from "creating any security interests over certain property in a specified contract provision."   (*Id.*)   Plaintiffs allege that instead of securing a negative pledge for $300,000, Mims had Burden sign a mortgage for $750,000.  (*Id.* ¶ 47.)   Plaintiffs allege that this occurred because Burden suffers from ocular histoplasmosis, resulting in severely impaired vision.   (*Id.* ¶ 49.)   Burden thus claims to have relied on Mims to read the documents for her, allowing him to lie about the entirety of their contents and execute this and other mortgages.  (*Id.* ¶¶ 49–51.)   Plaintiffs allege that, as a result of Mims's nefarious behavior, Silver Sands was defrauded out of at least $3,000,000 by Mims and the other Defendants who worked together to convert Burden's mortgage proceeds into profits for Defendants.   (*Id.* ¶ 1.)   Plaintiffs accordingly assert that Defendants violated RICO when they, *inter alia*, duped Burden into signing mortgages to satisfy previously fraudulently induced mortgages.  (*See generally* DE 1.)

Plaintiffs filed a motion to compel Mims to unseal and produce documents and communications concerning the DA's prior criminal investigation of Mims, including all relevant escrow records and documents from 2007 to 2013.  (DE 25.)   On March 14, 2022, this

---

[3] A negative pledge is a securitization device that "prevents a borrower from pledging any assets if doing so would jeopardize the lender's security."   Marshall Hargrave, *Negative Pledge Clause*, INVESTOPEDIA (May 13, 2020), https://www.investopedia.com/terms/n/negativepledgeclause.asp; *see also Metropolitan Life Ins. Co. v. RJR Nabisco, Inc*., 716 F. Supp. 1504, 1510 (S.D.N.Y. 1989) (noting that the negative pledge "restrict[ed] mortgages or other liens on the assets of [defendant] or its subsidiaries").

Court issued an Order finding that Mims himself did not put his criminal records at issue.  As such, Mims did not waive his privacy protections as set forth in N.Y. Crim. Proc. Law § 160.50 (McKinney 2021), and that the documents are not within Mims's possession, custody, or control. Accordingly, the Court denied the motion to compel Mims to request that his own records be unsealed.  (DE 28 at 6.)  The Court noted Plaintiffs' recourse, if any, would be to subpoena the DA.  (*Id.*)  Thus, Plaintiffs' motion to compel Mims to unseal the requested records was denied with leave to renew should the DA refuse to comply.  (DE 28 at 2.)

Since that Order, Plaintiffs have indeed served the DA's office with a subpoena and the DA's office has objected accordingly on the basis that such a subpoena requires an unsealing order.[4]  (DE 40 at 1; DE 40-1.)  Plaintiffs now request that the Court overrule the DA's objection and compel the non-party DA to produce the requested documents.[5]  (*Id.* at 3.)  In response, the DA has filed a motion to quash the subpoena, arguing that the criminal file is sealed per N.Y. Crim. Proc. Law § 160.50 and that the subpoena is overbroad and is merely a fishing expedition. (DE 40 at 2-3.)  Plaintiffs oppose.  (DE 42.)

---

[4] The Court takes note that there are conflicting dates in the parties' papers as to when the subpoena was issued: Plaintiffs claim May 10, 2022 while the DA states May 11, 2022.  (DE 34 at 1; DE 40 at 1.)

[5] Mims has filed a letter with the Court stating that the only reason Plaintiffs' current counsel is requesting the documents be unsealed is because they failed to pay their prior counsel and no longer have access to the prior submitted evidence.  (DE 37.)  He states that Plaintiffs should subpoena Plaintiffs' prior counsel and cites "irrevocable harm" as a result of unsealing the records.  (*Id.*)  Plaintiffs, in turn, argue that the letter is untimely and irrelevant and incorrectly conflate the standard for standing to quash a third-party subpoena with the elements to quash a third-party subpoena.  (DE 38); *Warnke v. CVS Corp.*, 265 F.R.D. 64, 66 (E.D.N.Y. 2010) ("Generally, standing to quash a non-party subpoena exists where the plaintiff asserts a legitimate privacy interest in the information sought.").  Additionally, Plaintiffs state that there are no other means of obtaining the requested documents.  (DE 38.)  Nonetheless, the Court finds that Plaintiffs' argument to have some merit as discussed below.

4

**LEGAL STANDARD**

"[A] valid subpoena is a legal instrument, non-compliance with which can constitute contempt of court." *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1364 (2d Cir. 1991). Subpoenas that are validly issued and served "under Rule 45(a)(3) operate as enforceable mandates of the court on whose behalf they are served." *Freund v. Weinstein*, No. 08-cv-1469 (FB)(MDG), 2009 U.S. Dist. LEXIS 109387, at *2 (E.D.N.Y. 2009).  Rule 45 also permits the serving party "[a]t any time, on notice to the commanded person" to "move the court for the district where compliance is required for an order compelling production or inspection."  Fed. R. Civ. P. 45(d)(2)(B)(i).

**DISCUSSION**

Plaintiffs request the Court to compel the DA to comply with the subpoena and turn over:

- All documents and communications concerning the Suffolk County District Attorney's Office's investigation of Defendant, and

- All escrow records and documents, including bank accounts, concerning Plaintiffs from 2007 to 2013.

(DE 34 at 1.)

Aside from Plaintiffs' improper service of the subpoena, the DA objects to (1) the sealed nature as well as (2) the breadth of the requested documents. [6]  (DE 40.)  The Court considers both of these objections below.

---

[6] The DA argues that it has no record of service of the subpoena at issue.  (DE 40 at 1.)  And, on September 8, 2022, the day after a call with Plaintiffs' counsel apprising the DA of the subpoena, the DA's office was the victim of a cyberattack, which prevented them from producing the requested documents regardless.  (*Id.*)  However, Plaintiffs do not object to the timeliness of the DA's response to the subpoena.  (DE 42 at 1.)

**A. Have Plaintiffs Established That Any of Exceptions under N.Y. Crim. Proc. Law § 160.50(1)(d) Apply?**

The DA argues that Plaintiffs fail to meet any of the exceptions to the sealing requirement pursuant to N.Y. Crim. Proc. Law § 160.50(1)(d).  (DE 40 at 3.)  The DA points to the legislative intent of maintaining sealed records to remove the stigma that stems from those who are accused of criminal conduct to allow them to pursue employment and education when cases are disposed of.  (*Id.*)  Thus, the DA claims that turning these records over to Plaintiffs would undermine the very purpose of the law.

Section 160.50 states in relevant part that,

1. Upon the termination of a criminal action or proceeding against a person in favor of such person . . . the record of such action or proceeding shall be sealed . . . . Upon receipt of notification of such termination and sealing:

(c) all official records and papers, including judgments and orders of a court but not including published court decisions or opinions or records and briefs on appeal, relating to the arrest or prosecution . . . on file with the division of criminal justice services, any court, police agency, or prosecutor's office shall be sealed and not made available to any person or public or private agency.

N.Y. Crim. Proc. Law § 160.50(1)(c) (McKinney 2021).

"The primary purpose of the sealing of records pursuant to [Section] 160.50 is to ensure confidentiality and protect the individual from the potential public stigma associated with a criminal prosecution."  *Thomas v. Mason*, Civ. No. 1:17-CV-626 (GTS/DJS), 2018 U.S. Dist. LEXIS 243583, at *4 (N.D.N.Y. June 25, 2018) (citing *Harper v. Angiolillo*, 680 N.E.2d 602, 605 (N.Y. 1997)).  "Section 160.50 furthers important privacy interests" and, as such, "a strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges" such as Section 160.50, "where this can be accomplished at no substantial cost to federal substantive and procedural policy."  *Crosby v. City of N.Y.*, 269 F.R.D. 267, 274 (S.D.N.Y. 2010) (quoting *King v. Conde*, 121 F.R.D. 180, 187 (E.D.N.Y. 1988)).  That said,

"'state privilege rules [such as Section 160.50] should not be permitted to frustrate the important federal interests in broad discovery and truth seeking and the interest in vindicating important federal substantive policy.'" *Thomas*, 2018 U.S. Dist. LEXIS 243583 at *6 (quoting *MacNamara v. City of N.Y.*, No. 04Civ.9612(KMK)(JCF), 2006 WL 3298911, at *3 (S.D.N.Y. Nov. 13, 2006)).

There are only six enumerated circumstances under which sealed criminal records may be turned over:

[S]uch records shall be made available to the person accused or to such person's designated agent, and shall be made available to

(i)    a *prosecutor* in any proceeding in which the accused has moved for an order pursuant to section 170.56 or 210.46 of this chapter, or

(ii)    *a law enforcement agency* upon ex parte motion in any superior court, or in any district court, city court or the criminal court of the city of New York provided that such court sealed the record, if such agency demonstrates to the satisfaction of the court that justice requires that such records be made available to it, or

(iii)    any *state or local officer or agency* with responsibility for the issuance of licenses to possess guns, when the accused has made application for such a license, or

(iv)    the *New York state department of corrections and community supervision* when the accused is on parole supervision as a result of conditional release or a parole release granted by the New York state board of parole, and the arrest which is the subject of the inquiry is one which occurred while the accused was under such supervision, or

(v)    any *prospective employer of a police officer or peace officer* as those terms are defined in subdivisions thirty-three and thirty-four of section 1.20 of this chapter, in relation to an application for employment as a police officer or peace officer; provided, however, that every person who is an applicant for the position of police officer or peace officer shall be furnished with a copy of all records obtained under this paragraph and afforded an opportunity to make an explanation thereto, or

> (vi) the *probation department* responsible for supervision of the accused when the arrest which is the subject of the inquiry is one which occurred while the accused was under such supervision.

N.Y. Crim. Proc. Law § 160.50(1)(d) (emphasis added).

Mims was charged with Grand Larceny in the Third Degree which was later reduced to Petit Larceny.  (DE 40 at 2.)  The DA subsequently dismissed the case and terminated the file in Mims's favor, which sealed the record.  (*Id.*).  The DA argues that Plaintiffs do not fit within any of the exceptions listed above, and that if the legislature wished to include an exception to account for plaintiffs, like those involved here, it could have surely done so.  (DE 40 at 3.)

In opposition, Plaintiffs cite to *Thomas v. Mason*, asserting that the Court can overrule objections under § 160.50 and compel disclosure of the records under the Court's inherent authority to compel production of the sealed records.  (DE 34 at 2; DE 42 at 1.)  They posit that these documents are relevant because they bear directly on the fraudulent inducement aspect of the contract signing.  (DE 34 at 3.)  Specifically, the financial records "would allow Plaintiffs to trace the funds to establish a pattern of racketeering activity…."  (*Id.*)  Plaintiffs further allege that the DA holds the only copies of the records which would show Mims's improper use of the funds.  (*Id.*)

At the outset, the Court finds that none of the exceptions under N.Y. Crim. Proc. Law § 160.50(1)(d) apply to the circumstances here.  As may be plainly noticeable from the court filings in this case, the Plaintiffs are not a prosecutor, law enforcement agency, state or local officer or agency, corrections or supervisions employee, employer of a peace or police officer, or member of the probation department.  However, "district courts do possess the authority to unseal state criminal records in the possession of a state district attorney, when the records are relevant to the federal lawsuit and 'the district attorney moves to quash a subpoena, or objects to

a discovery demand.'"  *K.A. v. City of New York*, 2022 U.S. Dist. LEXIS 65737 at *6-7 (citing

*Lehman v. Kornblau*, 206 F.R.D. 345, 347 (E.D.N.Y. 2001); *see also Libaire v. Kaplan*, 760 F.

Supp. 2d 288, 291 (E.D.N.Y. 2011) ("The decision whether to quash or modify a subpoena is

committed to the sound discretion of the trial court.") (citations omitted).

Here, the documents are relevant in that they are likely to reveal evidence as to Mims's

alleged acts of fraudulently inducing Plaintiffs to sign the documents at issue.  (DE 34 at 3.)

And, if these are the only copies of records that would demonstrate such evidence, then

unsealing and turning them over to Plaintiffs would be critical to prosecute the case.  *See Crosby*

*v. City of New York*, 269 F.R.D. 267, 273-76 (S.D.N.Y. 2010) (ordering the District Attorney's

Office of New York to turn over the list of non-party arrestees and related papers from criminal

cases in connection with prostitution charges that were *relevant* and *necessary* in aiding plaintiffs

in the prosecution of their claims) (emphasis added).  Thus, under the circumstances presented

here, considering the claims and allegations of the pleadings and papers filed to date, the Court

exercises its authority here to overrule the DA's objection and direct that the records be

unsealed.[7]  To be clear, this ruling is limited to the unique facts and circumstances presented here

and should not be construed as authority for unsealing criminal records in general.  The question

remains, however, whether the subpoena as drafted is overbroad.

**B.  Is the Subpoena Overbroad and Merely a Fishing Expedition?**

The DA argues that the subpoena is overbroad because it fails to specify the

---

[7] To the extent that the documents in the criminal file are alleged to be privileged, the DA of course would
have to provide a privilege log of the documents they claim to be protected.  (*See* DE 40 at 3.); *Haus v.*
*City of New York*, No. 03 Civ. 4915 (RWS) (MHD), 2006 U.S. Dist. LEXIS 85225, at *7 (S.D.N.Y. Nov.
16, 2006) (noting that a federal court should consider policy interests in state privileges and laws that
limit disclosure of confidential documents without infringing on federal policy interests).  Similarly, the
production of these records could and indeed should be the subject of a confidentiality stipulation
between and among the parties to this case.

documents sought with reasonable particularity.  (DE 40 at 3.)  Plaintiffs, on the other hand, argue that they seek financial records to which Mims has access and are located in Mims's criminal file which, they claim, has been alleged sufficiently. (DE 42 at 3.)

"Subpoenas issued under Rule 45 are subject to the relevance requirement of Rule 26(b)(1)." *Jalayer v. Stigliano*, No. CV102285 (LDH)(AKT), 2016 WL 5477600, at *2 (E.D.N.Y. Sept. 29, 2016) (citations omitted).  "Therefore, [t]he party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." *Id*. (quotes omitted.)  However, once relevance is demonstrated, the party opposing the subpoena must come forth and demonstrate "that the subpoena is over-broad, duplicative, or unduly burdensome." *Knight v. Local 25 IBEW*, No. 14-cv-6497 (DRH) (AKT), 2016 U.S. Dist. LEXIS 45920, at *6 (E.D.N.Y. Mar. 31, 2016).  "Whether a subpoena imposes an undue burden depends upon such factors as relevance, the need of the party for the documents, the breadth of the document requests, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Libaire*, 760 F. Supp. 2d at 293–94 (internal quotes omitted).  Courts look to whether the subpoena has specified the documents with "reasonable particularity," that is, the requests cannot be vague or duplicative in nature. *United States v. In'l Bus. Mach. Corp.*, 83 F.R.D. 97, 107 (S.D.N.Y. 1979).  However, the degree of reasonableness depends on each case's facts and circumstances, thus "[p]articularization must be 'adequate, but not excessive.'" *Id.*

Putting aside the sealed nature of the documents, the Court finds that Plaintiffs' requests clearly pass muster under Rule 26's relevancy standard.  Contrary to what the DA argues, the requests are not overbroad or unduly burdensome.  (DE 40 at 3.)  In fact, the DA fails to state how the documents are overbroad—the DA simply states that the requests were not addressed

with reasonable particularity.  This timeworn objection however, is not enough.  *See Barella v. Vill. of Freeport*, 296 F.R.D. 102, 105 (E.D.N.Y. 2013) ("The party objecting to the discovery demands must, with some degree of specificity, illustrate the nature and extent of the burden of production.").  Objections such as "overbroad," "undue burden," "vague," and "ambiguous" are no longer a safe harbor to one seeking to avoid production.  Rather, those objections – if genuine – must be supported by a degree of specificity as to why they might be overbroad, an undue burden, vague or ambiguous.  *See Fischer v. Forrest*, Nos. 14 Civ. 1304, 1307 (PAE) (AJP), 2017 U.S. Dist. LEXIS 28102, at *3 (S.D.N.Y. Feb. 28, 2017).  The DA here, relies solely on these boilerplate objections, failing to particularize *why* they are overbroad and the like.

Furthermore, the requests have been identified adequately considering the facts and circumstances of this case and Plaintiffs have demonstrated the necessity in obtaining such documents.  Here, the records from 2007 to 2013 are particularly pertinent because 2007 was when Mims and Burden had met through a mortgage broker who recommended Mims's services to Burden.  (DE 1 ¶ 42.)  Throughout that period until 2011, Plaintiffs allege that Mims defrauded Burden.  (*Id.* ¶¶ 61, 187.)  And, *at least* until 2012, Mims and the other former Defendants engaged in acts in furtherance of their enterprise at Plaintiffs' expense.  (*Id.* ¶ 179.); *cf. Giugliano v. FS2 Capital Partners, LLC,* CV 14-7240 (ADS) (AKT), 2016 U.S. Dist. LEXIS 45925, at *14 (E.D.N.Y. Mar. 31, 2016) (discussing the various document requests and finding that they were overbroad because they spanned a greater period of time than was relevant); *Gov't Emples. Ins. Co. v. Mayzenberg,* No. 17 CV 2802 (ILG)(LB), 2018 U.S. Dist. LEXIS 235068, at *10 (E.D.N.Y. June 29, 2018) (ordering that the subpoenas include a temporal limitation proportional to the case).  Furthermore, the second request is not for "any and all" escrow documents, but only those concerning Plaintiffs.  *Gropper v. David Ellis Real Estate, L.P.*, No.

13-CV-2068 (ALC) (JCF), 2014 U.S. Dist. LEXIS 16849, at *4 (S.D.N.Y. Feb. 10, 2014) (finding requests for "any and all documents" to be "inherently overbroad"); *Henry v. Morgan's Hotel Grp., Inc.*, No. 15-CV-1789 (ER)(JLC), 2016 U.S. Dist. LEXIS 8406, at *7 (S.D.N.Y. Jan. 25, 2016) (finding that defendant's request that plaintiff produce "all documents and communications, whether paper, electronic, or other media" referring to the instant matter "including but not limited to" personnel and disciplinary files and employment records was "plainly overbroad and impermissible"). Thus, the request is not overbroad, but rather is narrowly tailored to the relevant time period that would demonstrate Mims's fraudulent activity against Plaintiffs.

## CONCLUSION

For the reasons stated herein, Plaintiffs' motion (DE 34) is hereby granted and the DA's motion (DE 40) is denied. The DA is directed to produce the subpoenaed records within thirty (30) days of this Order.

Dated:      Central Islip, New York
            June 15, 2023

                          SO ORDERED:

                          /S/ *James M. Wicks*
                          JAMES M. WICKS
                          United States Magistrate Judge

12